AO108(2/90) Application for Seizure Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

All funds and other things of value up to $37,950.00 in M & T Bank account number xxxx6887, held in the name of Young Star Tours

**APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT**

CASE NUMBER:

I, _____Gregg C. Domroe_____ being duly sworn depose and say:

I am a(n) __Special Agent with the Federal Bureau of Investigation__ and have reason to believe that within the jurisdiction of this Court there is now certain property that is subject to forfeiture to the United States, namely (describe the property to be seized)

    All funds and other things of value up to $37,950.00 in M & T Bank
    account number xxxx6887, held in the name of Young Star Tours

which are (state one or more bases for seizure under the United States Code)

    subject to seizure, pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f) as proceeds traceable to or derived
    from violations of 18 U.S.C.§ 1347(Health Care Fraud), a "specified unlawful activity".

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.     ☒ YES   ☐ NO

Diane Lucas
Asset Forfeiture Unit, Criminal Division
(202) 514-8097

Signature of Affiant
Gregg C. Domroe, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence

at Washington, D.C.

_____
Date

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF A SEIZURE WARRANT

I, Gregg C. Domroe, being duly sworn, depose and state as follows:

## ITEMS TO BE SEIZED

1. This affidavit is in support of a seizure warrant for the following items:

All funds and other things of value up to $37,950.00 in the following business bank account:

## M & T Bank Account # xxxx6887

held in the name of Young Star Tours, the signatory on the account is Leonard Harry Young (hereinafter collectively referred to as "YOUNG").

## AFFIANT'S EXPERIENCE

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to the Washington Field Office, 601 4th Street NW, Washington, D.C. 20535. I have been a Special Agent since December 10, 2003, and have been investigating White Collar Crime matters since December 22, 2003. During my law enforcement career, I have participated in numerous investigations, including investigations involving health care fraud, bank fraud, wire fraud, fraud against the federal government, telemarketing fraud and narcotics violations. I have completed the seventeen-week agent training program given by the FBI, which includes instruction in the investigation of various criminal offenses, including theft, theft-schemes, fraud and related acts. I have completed two different one-week long seminars relating to health care fraud, which were sponsored by the FBI and private insurers. I have participated in numerous arrests and search warrants relating to white collar and drug related cases. I have served as lead agent in two trials, and as assisting agent in a third.

3. The affiant is working with the U.S. Department of Health and Human Services, Office of Inspector General, Office of Investigations ("HHS-OIG-OI"), and other government

...

personnel of the District of Columbia, Department of Health, Medical Assistance Administration, Office of Investigation and Compliance ("MAA-OIC") in the investigation of YOUNG and Young Star Tours. I make this affidavit based on personal knowledge through investigative techniques and in part, upon information derived from statements made by witnesses and other law enforcement officers, representatives of financial institutions, and a review of medical records, bank records and records provided by the Medical Assistance Administration ("MAA").

    4.  This affidavit is not intended to include each and every fact related to this investigation.  This affidavit only sets forth those facts necessary to support probable cause to believe that between September 1, 2006 and June 25, 2007, YOUNG submitted claims to and received payments from the D.C. Medicaid program for services that were not rendered to D.C. Medicaid recipients, and that those fraudulently obtained funds were deposited into YOUNG's M&T Bank business account # xxxx6887.

## PURPOSE OF APPLICATION AND LEGAL DISCUSSION

    5.  The Federal Bureau of Investigation and the U.S. Department of Health and Human Services, Office of Inspector General, Office of Investigations ("HHS-OIG-OI"), are investigating allegations that YOUNG defrauded the District of Columbia Medicaid program by submitting false claims to Affiliated Computer Services ("ACS"), the third party billing company for the District of Columbia Medicaid program, relating to alleged transportation services provided to District of Columbia Medicaid recipients, in violation of 18 U.S.C. § 1347 (health care fraud).

    6.  This Affidavit is submitted in support of seizing funds on deposit up to $37,950.00 in

the above-listed account by a civil seizure warrant pursuant to 18 U.S.C. § 981(b).

7.  As discussed in detail below, I have probable cause to conclude that YOUNG engaged in a pattern and practice of defrauding the District of Columbia Medicaid program and furthermore that there is probable cause to believe that proceeds of the health care fraud scheme have been deposited into the above listed account.  As the proceeds of health care fraud, in violation of 18 U.S.C. § 1347, the funds in YOUNG's M & T Bank business account #xxxx6887 are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as any property, real or personal, which constitutes or is derived from proceeds traceable to, or as property derived from an offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c).

8.  Title 18 U.S.C. § 984 provides that, in any forfeiture action *in rem* in which the subject property is cash [or] funds deposited into a financial institution, the government does not have to identify the specific property involved in the offense that is the basis for the forfeiture; it is no defense that said property has been removed and replaced by identical property; and identical property found in the same account as the property involved in the forfeiture offense are subject to forfeiture.  In essence, § 984 allows the government to seize for civil forfeiture identical property found in the same place where the "guilty" property had been kept.  However, § 984 does not allow the government to reach back in time for additional period; a forfeiture action against property not directly traceable to the offense that is the basis for the forfeiture cannot be commenced more than one year from the date of the offense.

## MEDICAID PROGRAM

9.  Medicaid is a program that provides medical assistance for certain individuals and families with low income and resources.  Medicaid is a "health care benefit program" in that it is

a public plan, affecting commerce, under which a medical benefit, item, or service is provided to individuals, and for which payment may be made under the plan or contract. The Medicaid program became law in 1965 as a jointly funded cooperative venture between the Federal and State governments to assist States in the provision of adequate medical care to eligible needy persons. The United States Department of Health and Human Services, Centers for Medicare and Medicaid Services ("CMS") is the Federal component responsible for oversight of the Medicaid programs throughout the United Sates.

10. Medicaid operates as a vendor payment program, with payments made directly to the service providers. Providers participating in Medicaid must accept the Medicaid reimbursement level as payment in full. Each state has relatively broad discretion in determining the reimbursement methodology and resulting rate for services, within federally-imposed upper limits and specific restrictions. States may impose nominal deductibles, co-insurance, or co-payments on some Medicaid recipients for certain services.

11. Title XIX of the Social Security Act, which established Medicaid, allows considerable flexibility within the States' Medicaid plans. However, some Federal requirements are mandatory if Federal matching funds are to be received. A State's Medicaid program must offer medical assistance for certain basic services to most categorically needy populations. States may also receive Federal matching funds to provide certain optional services.

12. Under the District of Columbia's Medicaid program, transportation is provided, if requested and a need is established, to all eligible Medicaid recipients who are seeking medical care and services covered under the program. Federal laws, regulations and rules prohibit falsely claiming transportation services not requested and authorized by the District of Columbia's

Medicaid Program, or not actually incurred or medically necessary.

13. CMS contracts with insurance carriers such as Affiliated Computer Services ("ACS"), and its predecessor, First Health, to process claims and reimburse to transportation providers for reasonable claims relating to pre-authorized transportation of Medicaid recipients.

## YOUNG STAR TOURS

14. In June, 2007, the FBI and HHS-OIG-OI began an investigation of YOUNG based on a referral from the District of Columbia's Department of Health Medical Assistance Administration, Office of Investigation and Compliance ("MAA-OIC").

15. During the investigation, the Affiant determined that Young Star Tours a/k/a: Young Transportation, Inc. is a District of Columbia Medicaid transportation provider. The owner of Young Star Tours is Leonard Harry Young. The transportation business is operated out of 7003 Tarquin Avenue, Temple Hills, Maryland 20748. Claims for transportation services provided by YOUNG were submitted electronically to ACS utilizing the WINASAP2000 software.

## YOUNG'S M&T BANK ACCOUNT

16. A review of bank records determined that M&T Bank business account #xxxx6887 is held in the name of Young Star Tours and the signatory on the account is Leonard Harry Young. The mailing address established for this account is 7003 Tarquin Avenue, Temple Hills, Maryland 20748-6921. The account was opened on November 30, 1998.

17. The Affiant has analyzed the deposits made into M&T Bank business account #xxxx6887 and found that between September 1, 2006 and June 25, 2007, $103,763 in payments from Medicaid for the Government of the District of Columbia were deposited into the account for transportation services allegedly provided by YOUNG.

18. On September 1, 2006, the balance of M & T Bank account #xxxx6887 was $44,960.36. As of June 30, 2007 the balance of the account was $58,819.39. Between September 1, 2006 and June 30, 2007, the account balance never dropped below $44,960.36.

19. The Affiant reviewed the cancelled checks provided by MAA, and found that all of the checks deposited between September 1, 2006 and June 30, 2007 into the above listed account were hard copy checks which were endorsed by YOUNG.

## **PROBABLE CAUSE**

20. MAA-OIC conducted a post payment review of paid claims submitted to the D.C. Medicaid Program by YOUNG for alleged services provided between January 2003 and August 2006. Fifteen recipients accounted for approximately 85% of the total D.C. Medicaid Program claims submitted by YOUNG during this time period. The post payment review consisted of the review of records, and interviews of recipients, responsible parties, primary case managers, primary care givers, medical records technicians, and administrators for the fifteen recipients. The post payment review showed that YOUNG billed the D.C. Medicaid Program and was paid for numerous fraudulent claims relating to each of these fifteen Medicaid recipients. The FBI and HHS-OIG conducted further investigation based on MAA-OIC's post payment review. The investigation revealed that between January of 2003 and June of 2007, YOUNG submitted over 6,000 false claims, causing a loss to the D.C. Medicaid Program of over $200,000. Below is a summary of false claims YOUNG submitted between September of 2006 and June of 2007 relating to some Medicaid recipients:

**Medicaid Recipient I.W.**

21. On August 9, 2007, Medicaid recipient I.W. was interviewed regarding services

provided by YOUNG. I.W. advised that YOUNG was transporting her to and from the Washington Hospital Center on Mondays, Wednesdays and Fridays. YOUNG did not provide any services for I.W. on the weekends.

22. An analysis of I.W.'s D.C. Medicaid billing revealed that YOUNG submitted 38 claims for services provided on Saturdays between September 2, 2006 and June 2, 2007. YOUNG received $1,045 for the 38 false claims relating to I.W.

**Medicaid Recipient V.J.**

23. On August 10, 2007, Merlin Jones, transportation coordinator for the Beverly Health and Rehabilitation Center was interviewed regarding Medicaid recipient V.J. Jones advised that V.J. has been a patient of Beverly Health and Rehabilitation Center from March of 2006 until the present day. Jones advised that YOUNG was not the Medicaid assigned transportation company for V.J.

24. An analysis of V.J.'s D.C. Medicaid billing revealed that YOUNG submitted 196 claims for services not provided to V.J. between September 2, 2006 and June 2, 2007. YOUNG was paid $5,390 for the 196 false claims relating to V.J.

**Medicaid Recipient J.R.**

25. On July 10, 2007, Sandra Harris, supervisor at Health Care Institute ("HCI") was interviewed regarding J.R. Harris advised that J.R. has been a patient of HCI since August 17, 2005 and is still patient. Harris advised that J.R. does not receive transportation services.

26. An analysis of J.R.'s D.C. Medicaid billing revealed that YOUNG submitted 228 claims for services not provided to J.R. between September 2, 2006 and June 2, 2007. YOUNG was paid $6,270 for the 228 false claims relating to J.R.

**Medicaid Recipient K.T.**

27. On July 10, 2007, Linda Simmons, Program Director for Associated Community Services was interviewed regarding K.T. Simmons advised that K.T. has been a patient at Associated Community Services ("ACS") since June 23, 1992. Simmons advised that she personally transports K.T. to Associated Community Services. Simmons has never heard of YOUNG. Simmons provided law enforcement with prior authorization forms indicating that ACS was the authorized transportation provider for K.T. between July 15, 2004 and February 12, 2008.

28. An analysis of K.T.'s D.C. Medicaid billing revealed that YOUNG submitted 228 claims for services not provided to K.T. between September 2, 2006 and June 2, 2007. YOUNG was paid $6,270 for the 228 false claims relating to K.T.

**Medicaid Recipient T.W.**

29. On July 10, 2007, Anthony Imeokparia, program compliance employee at Total Care Services ("TCS") was interviewed regarding T.W. Imeokparia advised that T.W. was a patient of TCS between June of 2004 and October of 2006. TCS provided all transportation services for T.W. while she was a patient. Imeokparia advised that no other companies provided transportation services. T.W. died in October of 2006.

30. An analysis of T.W.'s D.C. Medicaid billing revealed that YOUNG submitted 39 claims for services not provided to T.W. between September 2, 2006 and October 26, 2006. Six of the 39 claims were submitted after T.W.'s death. YOUNG was paid $907 for the 33 of the 39 false claims relating to T.W. YOUNG was denied payment for the 6 false claims submitted after T.W.'s death.

**Medicaid Recipient T.H.**

31. On July 10, 2007, the mother of Medicaid recipient T.H. was interviewed. She advised that On The Go Transportation had been providing transportation services to T.H. since approximately August 18, 2006. According to T.H.'s mother, YOUNG has not provided T.H. with any transportation services since On The Go Transportation started providing services for T.H. T.H.'s mother further advised that T.H. has never received transportation services on the weekends.

32. An analysis of T.H.'s D.C. Medicaid Billing revealed that YOUNG submitted 227 claims for services not provided to T.H. between September 2, 2006 and June 2, 2007. YOUNG was paid $6,242.50 for the 227 false claims relating to T.H.

**Medicaid Recipient C.C.**

33. On January 26, 2007, Tracy Plummer, Director of Nursing at St. Thomas Moore Nursing and Rehabilitation Center was interviewed regarding C.C. Plummer advised that C.C. was admitted to St. Thomas Moore Nursing and Rehabilitation Center on November 20, 2003, and was still a resident. Plummer stated that C.C. does not receive services outside of the facility.

34. On August 8, 2007, C.C. was interviewed at the St. Thomas Moore Nursing and Rehabilitation Center. C.C. advised that he has been a patient at St. Thomas Moore Nursing and Rehabilitation Center since November of 2003. C.C. stated that YOUNG provided transportation services prior to his admission into St. Thomas Moore Nursing and Rehabilitation Center. C.C. stated that since his admission, he rarely leaves the facility and when he does he is either transported by family or the facility transport van.

35. An analysis of C.C.'s D.C. Medicaid billing revealed that YOUNG submitted 226 claims for services not provided to C.C. between September 2, 2006 and May 31, 2007. YOUNG was paid $6,215 for the 226 false claims relating to C.C.

**Medicaid Recipient E.A.**

36. On August 7, 2007, Carolyn Lee Hite, Director of The Psychiatric Centered Chartered, Inc. ("PCCI") was interviewed regarding E.A. Hite advised that E.A. receives treatment at PCCI, Monday through Friday. Hite advised that E.A. does not receive treatment on the weekends.

37. On August 7, 2007, Nicole Marie Spayd-Tobiasz, Clinical Case Manager for E.A. was interviewed. She advised that E.A. is transported by YOUNG to and from the PCCI day program at PCCI, Monday through Friday. Spayd-Tobiasz advised that E.A. does not receive transportation services on the weekends. Spayd-Tobiasz personally transports E.A. to her medical appointments.

38. An analysis of E.A's D.C. Medicaid billing revealed that YOUNG submitted 40 claims for weekend services not provided to E.A. between September 2, 2006 and June 2, 2007. YOUNG was paid $1,100 for the 40 false claims relating to E.A.

**Medicaid Recipient E.G.**

39. On August 27, 2007, Tina Marie Allen, Clinical Supervisor for Community Connections Inc. ("CCI") was interviewed regarding E.G. E.G. has been a patient receiving services from CCI for approximately three years. Allen advised that E.G. utilizes the services of a medical transportation company to attend a day program at Rachel's Women's Center ("RWC") every Monday through Friday. Allen stated that E.G. does not receive transportation services on

Saturdays.

40. Allen advised that E.G. had medical appointments on October 27, 2006, November 28, 2006, February 23, 2007, March 13, 2007, April 23, 2007, and May 22, 2007. Allen advised that on these dates, E.G.'s case manager personally transported her to the medical appointments. E.G. did not utilize a transportation company on those days.

41. An analysis of E.G.'s D.C. Medicaid billing revealed that YOUNG submitted 43 claims for services not provided to E.G. between September 2, 2006 and June 2, 2007. YOUNG was paid $1,183 for the 43 false claims relating to E.G.

**Medicaid Recipient D.L.**

42. On May 1, 2007, the caretaker for D.L., Betty Whitehead, was interviewed. Whitehead advised that D.L. attends a day program Monday through Friday. Whitehead stated that D.L. does not have a weekend program where he requires transportation.

43. An analysis of D.L.'s D.C. Medicaid billing revealed that YOUNG submitted 34 claims for weekend services not provided to D.L. between October 14, 2006 and June 2, 2007. YOUNG was paid $935 for the 34 false claims relating to D.L.

**Medicaid Recipient G.T.**

44. On May 1, 2007, Jeffrey Gore, the Case Manager for G.T. was interviewed. Gore advised that G.T. has been attending a day treatment program since November 29, 2005. Gore advised that G.T. attends the program Monday through Friday. G.T. does not attend weekend sessions.

45. An analysis of G.T.'s D.C. Medicaid billing revealed that YOUNG submitted 40 claims for weekend services not provided to G.T. between September 2, 2007 and June 2, 2007. YOUNG was paid $1,100 for the 40 false claims relating to G.T.

**Medicaid Recipient E.T.**

46. On September 6, 2007, Asha Pandit, Manager for PSI Golden Years Program, hereinafter PSI, was interviewed regarding E.T. E.T. attended the PSI program between February 28, 2006 and December 11, 2006. Pandit provided E.T. attendance records for that time period. Between September 2, 2006 and December 9, 2006, E.T. was absent from the PSI Golden Years Program 33 times. Pandit advised that the PSI operates Monday through Friday. PSI does not operate on the weekends.

47. An analysis of E.T.'s D.C. Medicaid billing revealed that YOUNG submitted 33 claims for dates that E.T. did not attend the PSI day program, and 13 claims for weekend. The combined 46 claims between September 2, 2007 and December 9, 2006 were for services not provided to E.T. YOUNG was paid $1,292.50 for the 46 false claims relating to E.T.

48. It is the Affiant's belief that a seizure warrant is necessary pursuant to 21 U.S.C. § 853(f) as the funds in the account can be easily relocated to another bank account or spent and therefore, a protective order pursuant to 21 U.S.C. § 853(e) would not be sufficient to assure the availability of the funds for forfeiture.

## **CONCLUSION**

49. Based on the facts, the Affiant believes there is probable cause that from September 2, 2006 and June 2, 2007, YOUNG received payments in the amount of $37,950.00 from the D.C. Medicaid Program based on his submission of fraudulent billing. All of those funds were deposited in YOUNG's M & T Bank business account #xxxx6887. Furthermore, the balance of that account has not fallen below $44,960.36 during that time period. Thus, there is probable cause to believe that $37,950.00 in proceeds of health care fraud are still in the above listed account based upon accounting principals and 18 U.S.C. § 984. Therefore, the Affiant submits that pursuant to 18 U.S.C. 981(b) and 21 U.S.C. § 853(f) funds up to $37,950.00 in YOUNG's M & T Bank business account #xxxx6887 are subject to seizure and forfeiture.

_____
Gregg C. Domroe
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this _____ day of September 2007

                                                        _____
                                                        United States Magistrate Judge